[No. 35570. En Banc. May 17, 1962.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT L. JOHNSON, *Appellant.**

*Reported in 371 P. (2d) 611.

22

*Harold J. Hall,* for appellant.

*Arnold R. Zempel* and *John W. Maxwell,* for respondent.

WEAVER, J.—A jury having found defendant guilty of feloniously taking indecent liberties upon the person of a thirteen-year-old female not his wife, defendant appeals from the judgment, sentence and commitment to the state penitentiary.

Defendant's assignments of error present three issues: first, he was twice-placed in jeopardy for the same crime; second, the state placed his character in issue, although he did not take the stand to testify in his own defense; third, the court erred when it refused to admit in evidence defendant's written denial of improper relations with the prosecuting witness. The denial was made to a police officer seven days prior to his written confession.

August 17, 1959, defendant was charged in justice court, Everett precinct, Snohomish County, with contributing to the dependency and delinquency of a minor "on or about the 23rd day of July, A.D., 1959, and continuously from

July 22, 1959." The allegations of the complaint are couched substantially in the terms of the statutes. RCW 13.04.010; RCW 13.04.170.

The record before us in nowise identifies the facts presented in justice court to support the complaint. The defendant was found guilty and sentenced to ninety days' confinement in the county jail.

November 6, 1959, defendant was charged by information, in the Superior Court of Snohomish County, with the crime of indecent liberties, allegedly taken upon the person of the same minor named in the justice court complaint. The charging portion of the information reads:

"That he, the said Robert L. Johnson, in the County of Snohomish, State of Washington, on or about the 22nd day of July, 1959, did then and there wilfully, unlawfully and feloniously take indecent liberties with and upon the person of one [name omitted] also known as [name omitted], a female person under the age of fifteen years, to-wit: of the age of thirteen years, the said [name omitted], not then and there being the wife of the said Robert L. Johnson, contrary to the form and the statute in such case made and provided and against the peace and dignity of the State of Washington."

In short, the prosecuting witness testified: that she and defendant left her home at Oso in defendant's panel truck, about 3:30 a.m., July 22, 1959; that they planned to go to Oregon; that they stopped near Snohomish for about an hour; and that defendant had intercourse with the prosecuting witness several times.

Defendant's written confession was admitted in evidence. In it, defendant stated:

"I wish to correct my original statement that I gave on the 1 Oct 59 in that I did have intercourse with [name omitted] once, this was on the morning we left Oso 23 July 59. We stopped near a graveyard on the Everett-Snohomish Highway about four or four and one half miles east of Everett . . ."

The only objection made to its admission was that a proper foundation had not been laid, to which no error is assigned.

Both prior and subsequent to trial, defense counsel timely presented the issue that defendant had been twice placed in jeopardy for the same crime.

▉ Double jeopardy exists if the offenses are identical or if the lesser offense can be said to be "a constituent element in the perpetration of the greater offense." *State v. Campbell,* 40 Wash. 480, 483, 82 Pac. 752 (1905). The offenses, however, must be identical in both law and fact. *State v. Barton,* 5 Wn. (2d) 234, 105 P. (2d) 63 (1940); *State v. Kingsbury,* 147 Wash. 426, 266 Pac. 174 (1928); see *State v. Schoel,* 54 Wn. (2d) 388, 341 P. (2d) 481 (1959). Double jeopardy does not exist where a defendant stands charged with different offenses, even though they may arise out of the same act. *State v. Boren,* 42 Wn. (2d) 155, 164, 253 P. (2d) 939 (1953), and cases cited; see *Ciucci v. Illinois,* 356 U. S. 571, 2 L. Ed. (2d) 983, 78 S. Ct. 839 (1958).

▉ A comparison of the statute defining the crime of contributing to the dependency and delinquency of a minor[1] with the statute defining the crime of indecent liberties[2] leads to the inescapable conclusion that the two specify distinct and separate crimes. Neither is necessarily "a constituent element in the perpetration" of the other. For example: One might be guilty of contributing to the delinquency of a minor (see *State v. Adams,* 95 Wash. 189, 163 Pac. 403 (1917)) and not of the crime of indecent liberties.

The misdemeanor and the felony charged in the instant

---

[1] RCW 13.04.010 defines a delinquent and dependent child under the age of eighteen years. Included is a child "who is in danger of being brought up to lead an idle, dissolute or immoral life" and one who is "guilty of immoral conduct."

RCW 13.04.170 provides, in part:

". . . any . . . person who, by any act or omission, encourages, causes or contributes to the dependency or delinquency of such child shall be guilty of a misdemeanor . . ." See *State v. Adams,* 95 Wash. 189, 163 Pac. 403 (1917).

[2] RCW 9.79.080: ". . . (2) Every person who takes any indecent liberties with or on the person of any child under the age of fifteen years . . . whether with or without his or her consent, shall be guilty of a felony, . . ."

case are not identical in law; hence, defendant has not been in double jeopardy.

Defendant contends that he did not have a fair trial because the state placed his character in issue, although he did not take the stand to testify in his own behalf. His contention is based upon (a) certain testimony of the prosecuting witness; (b) certain testimony of the mother of the prosecuting witness; and (c) argument of the deputy prosecuting attorney.

We do not quarrel with defendant's contention, or the authorities cited, that he must be tried for the offense charged in the information; that evidence of other crimes is inadmissible unless it falls within the narrow corridor of certain exceptions we discuss later; that not having taken the stand, the state may not initially attack his character; and that he must have a fair trial. These rules of law, however, must be equated to the facts of the instant case.

A. PROSECUTING WITNESS

The prosecuting witness, having previously stated that defendant had intercourse with her in Snohomish County, testified as follows:

"Q [by deputy prosecutor] The question is: Now, [name omitted] where did you spend the evening, the 22nd?

"A Up at Stevens Pass.

"Q Now, did you spend the night with the defendant?

"A Yes, I did.

"Q And on this occasion, did you have sexual intercourse with defendant?

"A Yes, I did."

Stevens Pass not being in Snohomish County, defendant argues that the quoted testimony was not admissible as it brands him with a crime not charged in the information.

We do not agree, for the questioned evidence was admissible.

In *State v. Dinges,* 48 Wn. (2d) 152, 154, 292 P. (2d) 361 (1956), we said:

"A defendant must be tried for the offense charged in the indictment or information. To introduce evidence of an unrelated crime is grossly and erroneously prejudicial, unless the evidence of the unrelated crime is admissible to

show motive, intent, the absence of accident or mistake, a common scheme or plan, or identity. These exceptions are not necessarily exclusive; . . ."

The court extends a further safeguard to the defendant. In *State v. Goebel*, 36 Wn. (2d) 367, 379, 218 P. (2d) 300 (1950), the court said:

" . . . we are of the opinion that this class of evidence [evidence of another crime], where not essential to the establishment of the state's case, should not be admitted, even though falling within the generally recognized exceptions to the rule of exclusion, when the trial court is convinced that its effect would be to generate heat instead of diffusing light, or, as is said in one of the law review articles above referred to [46 Harv. L. Rev. 954; 51 Harv. L. Rev. 988], where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it. . . ."

The testimony of the prosecuting witness, to which defendant now objects, is relevant, for it tends to establish a common scheme or plan. Being a continuation of the crime charged, we cannot say that the "minute peg of relevancy will be entirely obscured by the dirty linen hung upon it."

Our conclusion that the evidence of a subsequent crime was admissible, under the facts of this case, is supported by the decisions of this court in *State v. Crowder*, 119 Wash. 450, 205 Pac. 850 (1922), and *State v. Brown*, 31 Wn. (2d) 475, 197 P. (2d) 590, 202 P. (2d) 461 (1948).

B. MOTHER OF THE PROSECUTING WITNESS

While the mother of the prosecuting witness was testifying, the following occurred:

"Q (By Mr. Maxwell) Mrs. [name omitted], did Robert Johnson state to you that he was leaving on the 22nd of July, 1959?

"A The only thing he told me was that he was going to Everett. *He was supposed to go in and see his parole officer.*

"Mr. Hall: I move for a mis-trial right now, Your Honor. This lady has been volunteering information all along, and she has stepped over the line now, and she has prejudiced the rights of this defendant, and I don't feel he can get a fair trial under these circumstances.

"The Court. Ladies and Gentlemen of the Jury, *you will disregard the last answer of the witness.* (To Witness) And please, if you will, Mrs. [name omitted] try to answer the questions more directly instead of going ahead and giving a dissertation. Do you think you can do that?

"The Witness: I will try.

"Mr. Hall: I take exception, Your Honor, to the ruling. I don't feel this man can get a fair trial under these circumstances.

"The Court: I will reserve my ruling on that matter. Proceed counsel." (Italics ours.)

Subsequently, the trial court denied the motion for a mistrial.

We consider the following: (a) the question asked was proper; (b) the answer was irresponsive, not elicited by any question of the prosecutor; (c) the answer was an uncalled-for observation of the witness; (d) the answer was a personal conclusion of the witness and did not purport to be a statement of defendant; (e) defense counsel made timely objection and motion for mistrial; (f) the court immediately instructed the jury to disregard the answer of the witness; (g) defendant, as was his constitutional right, did not take the stand to testify in his own behalf; (h) during the trial, no further reference was made to "parole officer"; (i) misconduct of counsel is not involved.

In *State v. Devlin,* 145 Wash. 44, 46, 52, 258 Pac. 826 (1927), this court reversed a conviction for robbery and murder. Over objection of counsel, a state's witness was permitted to testify that he had seen the accused's picture in the "rogue's gallery" and to define the "rogue's gallery" as "a bunch of pictures in a book down there at the station."

The trial judge overruled a motion to strike the testimony. In granting a new trial, this court said:

" . . . it is just as essential that one accused of crime shall have a fair trial as it is that he be tried at all, whether he be guilty or not, has his picture in the rogue's gallery or not. . . ."

" . . . It was too well calculated to lead the jury into the belief that they were dealing with a criminal already so notorious as to demand the vigilance and services of the

police and detectives of the country, and thereby lessen the jury's sense of responsibility or excuse that calm and faithful deliberation which should, at all times, prevail in the trial of one accused of such atrocious crimes."

In *State v. Bradley,* 175 Wash. 481, 492, 27 P. (2d) 737 (1933), a witness volunteered that the accused had told him "he had a record." Defense counsel objected and the prosecuting attorney advised the witness not to discuss that part of the conversation.

This court found that the irresponsive and improper answers, not elicited by any questions of the prosecutor, did not constitute prejudicial error.

In *State v. Duree,* 52 Wn. (2d) 324, 327, 324 P. (2d) 1074 (1958), a police officer inadvertently referred to a "mugg shot." There was no objection or motion to strike the testimony. On appeal, defendant argued that his character was put in issue, thus he was forced to take the stand. In affirming the conviction, the court said:

". . . We are convinced that, when the appellant took the stand, he did so for the purpose of denying his guilt and not because of the inadvertent statement of the police officer. Under the circumstances of this case, the reference to the picture did not constitute reversible error."

In *State v. Smith,* 55 Wn. (2d) 482, 348 P. (2d) 417 (1960), the cover sheet of the instructions and the verdict forms inadvertently contained unproved aliases of the defendant. This court reversed the conviction, saying:

". . . It is common knowledge that the use of aliases is frequently associated in the public mind with the so-called 'criminal' class. We cannot assume that the jury was unaffected by the unproved aliases. To do so would be sheer speculation. The doubt must be resolved in favor of the accused."

In two of the cases noted, this court affirmed the verdict of conviction; in the other two, the verdict was reversed and a new trial was granted. In none of them was the jury instructed to disregard the evidence claimed to be erroneous. Inherent in all four opinions are the determinations

of this court that the claimed error did or did not deprive defendant of a fair trial.

We do not place undue weight, in the instant case, on the fact that the reference to "parole officer" was inadvertent, as were the claimed errors in the *Bradley, Duree,* and *Smith* cases, *supra*; for the remark, if prejudicial, would have substantially the same effect on defendant's rights to a fair trial whether the statement was inadvertent or intentional.

■ This does not mean, however, that every inadvertent remark volunteered by a witness, which the jury is instructed to disregard, guarantees a new trial. Under such a "rule of thumb," it would be possible to keep a criminal prosecution in the trial stage *ad infinitum.*

We find the best statement of the applicable rule in *State v. Priest,* 132 Wash. 580, 584, 232 Pac. 353 (1925), wherein this court said:

" . . . It is not the rule that every inadvertent or irresponsive answer of a witness will work a new trial. The law presumes, and must presume, that the jury finds the facts from the evidence the court permits them to consider. Any other rule would render the administration of the law impractical. The state in criminal trials cannot choose its witnesses. It must call those who have knowledge of the facts, whether they be wilfully designing or stupidly ignorant, and if new trials were granted because of their irresponsive answers, the administration of the criminal laws would become so burdensome as to deny to the state the protection afforded by such laws. Again, as we have said on other occasions, to maintain a contrary rule is to impeach the intelligence of the jury; it is to say that they will return a verdict on evidence which the court tells them they must not consider—a verdict they would not have returned had the inadmissible evidence been kept entirely from their knowledge."

The test is this: Did the inadvertent remark, which the jury was instructed to disregard, when viewed against the backdrop of all the evidence, so taint the entire proceedings that the accused did not have a fair trial?

■ We have read and considered the record carefully. We conclude, as did the trial court, that the inadvertent

reference to "parole officer" did not deprive defendant of a fair and impartial trial under the facts of this case.

C. ARGUMENT OF DEPUTY PROSECUTING ATTORNEY

The argument of counsel to the jury does not appear in the statement of facts. Counsel, however, stipulated that the deputy prosecuting attorney, in the course of his final argument to the jury, made a certain statement of fact, which, it is now claimed, is not supported by the record.

The record does not disclose whether an objection was made to the statement or whether, if requested, the court did or did not instruct concerning it.

■  Improper argument cannot be urged as error unless the aggrieved party requested the trial court to correct it, by instructing the jury to disregard it, and claimed error for the court's refusal to do so. The rule is applicable to the instant case, which does not come under the exception to the rule discussed in *State v. Case*, 49 Wn. (2d) 66, 298 P. (2d) 500 (1956), and cases cited.

Finally, defendant assigns error to the court's refusal to admit in evidence defendant's written denial of improper relations with the prosecuting witness. The statement was made to a police officer seven days prior to the written confession.

On cross-examination by defense counsel, a police officer testified: that on October 1, 1959, defendant denied improper relations with the prosecuting witness; that the statement was reduced to writing and is defendant's exhibit No. 1 for identification; that defendant's confession (Exhibit A) was reduced to writing and signed October 8, 1959. Defendant's exhibit No. 1 for identification was excluded on the ground that its admission would be improper cross-examination.

The state having rested, defense counsel called the police officer to the stand and again offered in evidence defendant's exhibit No. 1 for identification. It was refused on the ground that it was a self-serving declaration of the defendant.

■  In *State v. Gates*, 28 Wash. 689, 69 Pac. 385 (1902), this court held that the fact that the prosecution put in

evidence statements made by the accused as a part of its case in chief and not for the purpose of impeaching the accused—who had not yet appeared as a witness in his own behalf—would not warrant the admission of statements made by the accused to his own witness, since the statements would be in the nature of self-serving declarations.

The *Gates* case, *supra,* is cited as authority for the rule that

"To be admissible in evidence, however, it must clearly appear that the exculpatory or self-serving statements were made in the same confession or conversation sought to be introduced in evidence, and were not made on other or separate occasions, or to other witnesses." Anno.: "Proof of entire conversation containing alleged confession." 2 A. L. R. 1017, 1028.

Defendant's exhibit No. 1 for identification does not meet this test. Its exclusion was not error. See *State v. Totten,* 67 Wash. 192, 200, 121 Pac. 70 (1912).

The judgment is affirmed.

HILL, DONWORTH, ROSELLINI, OTT, FOSTER, HUNTER, and HAMILTON, JJ., concur.

FINLEY, C. J., concurs in the result.