STATE OF NEBRASKA, APPELLEE, v. LADDIE DITTRICH, APPELLANT.

215 N. W. 2d 637

Filed March 14, 1974. No. 39154.

Bruce G. Mason and Thomas L. Moser of Zweiback & Laughlin, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and FLORY, District Judge.

NEWTON, J.

Defendant was charged with committing murder in the first degree in that he killed John R. Wisotzkey during the perpetration of a robbery. He has appealed his conviction and assigns as error the reception of evidence of a prior conviction of defendant; the admission of two photographs of the body of the deceased; the refusal of the court to give defendant's requested instruction No. 9; and insufficiency of the evidence to support a charge of murder while perpetrating a robbery. We affirm the judgment of the District Court.

The evidence indicates that in the early morning hours of February 17, 1973, one Terry Perkins met and committed an act of prostitution with John R. Wisotzkey, hereinafter referred to as the deceased, at an Omaha, Nebraska, hotel. A quarrel ensued and she did not get paid. On leaving she met her paramour Leroy Montgomery, James Bland, another woman, and this defendant who were waiting in Montgomery's car in front of the hotel. She complained of being roughed up and requested that deceased be asked about her money. A few

minutes later the deceased appeared and drove off in his car. Terry, the other woman, and the three men followed. They ran the deceased off the highway, stopped close by, and the three men assaulted him, using fists, a tire iron, and a bayonet knife. Deceased died several hours later from the injuries received. His billfold was taken, the contents removed, and it was discarded. The record does not disclose how much, if any, money was obtained.

During the direct examination of Terry Perkins she was asked: "How long have you known Mr. Dittrich?" and replied: "Ever since he got out of the penitentiary." A motion for a mistrial was made and denied but the court admonished the jury to disregard the statement of the witness. It also instructed the jury to disregard evidence stricken from the record. A similar response had been made by Terry when her deposition was taken in reply to the following question posed by defendant's attorney: "When did you first meet Laddie Dittrich?" It is contended that this should have alerted the prosecutor and enabled him to avoid the answer given. The contention is a doubtful one as the witness was a hostile witness who was under arrest on the same charge, was a friend of defendant's, and had consistently shown a lack of frankness in regard to the affair. It is apparent that were we to accede to defendant's theory that a mistrial should have been declared, such a witness could willfully and deliberately bring about a mistrial and render conviction difficult, if not impossible. There was no design on the part of the prosecution to bring out this type of evidence. The answer given was not relevant. She was not asked how, where, or when she met the defendant, but how long she had known him. The same type of inadvertent evidence was received in the case of State v. Kirby, 185 Neb. 240, 175 N. W. 2d 87. Ordinarily, when an objection to, or motion to strike, improper evidence is sustained and the jury

is instructed to disregard it, such instruction is deemed sufficient to prevent prejudice resulting.

Evidence of a defendant's prior conviction of a felony presents one of the more serious situations and in a close case could perhaps be a determining factor in a jury's verdict. Such evidence, although inadvertently presented, could possibly have such an effect. We believe an adequate statement regarding such situations has been presented in State of Washington v. Johnson, 60 Wash. 2d 21, 371 P. 2d 611, wherein it is held: " '* * * It is not the rule that every inadvertent or irresponsive answer of a witness will work a new trial. The law presumes, and must presume, that the jury finds the facts from the evidence the court permits them to consider. Any other rule would render the administration of the law impractical. The state in criminal trials cannot choose its witnesses. It must call those who have knowledge of the facts, whether they be wilfully designing or stupidly ignorant, and if new trials were granted because of their irresponsive answers, the administration of the criminal laws would become so burdensome as to deny to the state the protection afforded by such laws. Again, as we have said on other occasions, to maintain a contrary rule is to impeach the intelligence of the jury; it is to say that they will return a verdict on evidence which the court tells them they must not consider —a verdict they would not have returned had the inadmissible evidence been kept entirely from their knowledge.'

"The test is this: Did the inadvertent remark, which the jury was instructed to disregard, when viewed against the backdrop of all the evidence, so taint the entire proceedings that the accused did not have a fair trial?" See, also, State v. Lillian, 180 Kan. 640, 305 P. 2d 828; Dale v. Commonwealth (Ky. App.), 397 S. W. 2d 168; Fisher v. State (Tex. Crim. App.), 493 S .W. 2d

841; People v. O'Farrell, 161 Cal. App. 2d 13, 325 P. 2d 1002.

In the present instance the evidence of defendant's guilt was conclusive and the objectionable statement could not have been a determinate factor in the verdict.

Two color photographs of the body of John R. Wisotzkey are in evidence, one of the head and face and the other of the partially covered upper half of his body. They tend to show the extent and seriousness of the injuries inflicted upon him. They were properly received. "In a homicide case, photographs of the victim, upon proper foundation, may be received in evidence for purposes of identification, to show the condition of the body, the nature and extent of wounds or injuries, and to establish malice or intent." State v. Robinson, 185 Neb. 64, 173 N. W. 2d 443.

The defendant's requested instruction No. 9 in regard to an aider or abettor provided: "* * * if you find that the intent of the defendant, Laddie Dittrich was different from that of the perpetrator, LeRoy Montgomery, the aider's guilt is measured by the intent that activated him.

"Therefore, you must find beyond a reasonable doubt that the defendant intended to rob John Wisotzkey before you can convict him of first degree murder."

The evidence shows that this defendant was not the one who inflicted the knife wounds. However, the undisputed medical evidence was that death resulted from multiple injuries including not only the knife wounds but also blows to the abdomen. The fact that this defendant used only his fists as weapons does not indicate he was innocent of having inflicted any of the wounds contributing to the death of deceased.

Defendant's argument is based on the assertion that he had no intent to rob the deceased and that without such intent he cannot be convicted of felony murder. The argument is rhetorical. The evidence sustains a

finding that he had the necessary intent and the instructions given clearly covered the point. Furthermore his proposed instruction does not correctly state the law on the subject. "Where a crime requires the existence of a particular intent, an alleged aider or abettor cannot be held as a principal unless it is established that the aider knew that the perpetrator of the act had the required intent, or that the aider himself possessed the required felonious intent." 21 Am. Jur. 2d, Criminal Law, § 123, p. 199. See, also, State v. Kneedy, 232 Iowa 21, 3 N. W. 2d 611. Denial of an erroneous requested instruction is not error.

In any event, the defendant's theory was properly submitted to the jury. The court instructed that an essential element of the offense was the killing of John R. Wisotzkey while the defendant was in the perpetration of a robbery from him and further instructed that to constitute robbery there had to be an intent to rob or steal. The assignment is without merit.

Examination of the record in this case demonstrates convincingly that defendant's contention of insufficiency of the evidence is not meritorious. Defendant was present when Terry Perkins requested that the deceased be asked about her money, throughout the ensuing pursuit that followed, and actively participated in the assault which culminated in the robbery and death of Wisotzkey.

The judgment of the District Court is affirmed.

AFFIRMED.