763 N.W.2d 420 (2008)
17 Neb. App. 388
STATE of Nebraska, appellee,
v.
Ricky Lee RICHARDSON, appellant.
No. A-07-1316.
Court of Appeals of Nebraska.
September 23, 2008.
*423 Dennis R. Keefe, Lancaster County Public Defender, and Christopher Eickholt for appellant.
Jon Bruning, Attorney General, and George R. Love, Columbus, for appellee.
INBODY, Chief Judge, and MOORE and CASSEL, Judges.
MOORE, Judge.

I. INTRODUCTION
Ricky Lee Richardson appeals from his conviction and sentence in the district court for Lancaster County for one count of driving during revocation, subsequent offense. Because the district court did not err in denying Richardson's motions to suppress or abuse its discretion in sentencing Richardson and because there was sufficient evidence in the record to support Richardson's conviction, we affirm.

II. BACKGROUND
Richardson's appeal arises out of his conviction and sentence following a traffic stop on September 4, 2006, in Lincoln, Nebraska, by Officer Jeremy Wilhelm of the Lincoln Police Department. Wilhelm initiated the traffic stop because he did not observe a front license plate on the vehicle. As Wilhelm was making the stop, he was able to see a license plate in the front window of the vehicle, although he could not see the numbers or letters on the plate. Wilhelm was later able to see that the license plate was on the dashboard, not fully upright, and not securely fastened in place. During the course of the stop, Wilhelm learned that Richardson's operator's license was suspended. Wilhelm then placed Richardson under arrest and drove him to the Lancaster County Corrections facility. Wilhelm did not read Richardson his Miranda rights at any time during his contact with Richardson.
The State filed an information on October 12, 2006, charging Richardson with one count of driving during revocation, subsequent offense, under Neb.Rev.Stat. § 60-6,197.06 (Cum.Supp.2006), a Class III felony.
*424 Richardson filed three separate motions to suppress, which were heard by the district court on January 11, 2007. The court received Wilhelm's testimony and heard arguments from counsel. We discuss the relevant portions of Wilhelm's testimony in the analysis section below.
The district court entered an order on January 29, 2007, overruling Richardson's motions to suppress. The court made certain findings of fact and then considered whether Wilhelm had grounds to stop Richardson's vehicle. The court reviewed the statutory requirements for the display of license plates and concluded Nebraska law requires that the front license plate be prominently displayed, securely fixed and upright, and on the front of the vehicle and that the letters and numbers be plainly visible during daylight and under artificial light at night. The court concluded that if the front plate is not displayed in a manner meeting these criteria, a violation occurs. The court found that in this case, Richardson's front license plate was in the vehicle, was not securely fixed, and was not upright, and the letters and numbers were not plainly visible to Wilhelm as he observed Richardson's vehicle travel on the street. The court found that Wilhelm had probable cause to stop Richardson's vehicle as it appeared from the evidence that Richardson was in violation of statutory provisions relating to the display of license plates. Upon concluding that the traffic stop was lawful, the court overruled Richardson's motions to suppress to the extent that they related to any visual or auditory impressions of Wilhelm during his contact with Richardson.
The district court then addressed Richardson's argument that his statements to Wilhelm should be suppressed on the basis that they were obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court determined that Richardson was not in custody for purposes of Miranda during the relevant interaction with Wilhelm. The court also determined that Richardson's statements were freely, voluntarily, knowingly, and intelligently made and were not the product of promises, force, fear, oppression, or coercion.
Trial was held on May 21, 2007. The district court received exhibit 1 (trial stipulation), exhibit 2 (certified driver's abstract record), exhibit 3 (certified copy of prior conviction for third offense driving under the influence (DUI)), and exhibit 4 (certificate of incarceration), which were exhibits offered by the State. The trial stipulation, in which Richardson preserved his objection to the admission of the evidence targeted in his pretrial motions to suppress, provided that Wilhelm would testify consistent with his testimony at the suppression hearing. The court also received exhibit 5 (certified copy of Lincoln Mun.Code § 10.52.020), offered by Richardson.
Because not all of the evidence that the parties wished to present was available on May 21, 2007, trial was continued until July 2 for the presentation of further evidence. On July 2, the district court received exhibits 6 and 7 (certified copies of Lincoln city ordinances relating to DUI offenses), offered by the State, and exhibit 8 (bill of exceptions from the suppression hearing), offered by Richardson.
The district court entered an order on September 10, 2007, finding Richardson guilty of driving during a period of revocation. The court ordered a presentence investigation and set a date for an enhancement and sentencing hearing. We discuss the relevant provisions of the court's written opinion in the analysis section below.
On November 9, 2007, the district court received exhibits relevant to enhancement of the charge against Richardson and *425 found Richardson guilty of a subsequent offense for driving during revocation.
On November 26, 2007, the district court sentenced Richardson to incarceration for a period of 3 to 6 years, revoked Richardson's operator's license, and suspended his privilege to operate a motor vehicle for a period of 15 years. Richardson subsequently perfected his appeal to this court.

III. ASSIGNMENTS OF ERROR
Richardson asserts that (1) the district court erred in denying his motions to suppress, (2) the evidence was insufficient to support the guilty verdict, and (3) the court abused its discretion by imposing an excessive sentence.

IV. ANALYSIS

1. MOTIONS TO SUPPRESS
Richardson asserts that the district court erred in denying his motions to suppress. Richardson argues that there was not a traffic violation in this case warranting the stop and that because the stop itself was illegal, any evidence seized as a result of the stop and any statements made by Richardson during the resulting investigation should have been suppressed.

(a) Standard of Review
A trial court's ruling on a motion to suppress based on the Fourth Amendment, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. State v. Royer, 276 Neb. 173, 753 N.W.2d 333 (2008). The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. State v. Allen, 269 Neb. 69, 690 N.W.2d 582 (2005), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).

(b) Motions to Suppress Were Properly Denied
At the suppression hearing, Wilhelm testified that he noticed Richardson's vehicle because of the improper display of the front license plate. Wilhelm initially thought there was no front plate on the vehicle. Before the stop, however, Wilhelm observed what appeared to be a license plate in the front window of the vehicle. The front license plate was not on the front bumper; but, rather, it was in the front window of the vehicle, "tucked in" between the glass and the dashboard. Although the front license plate appeared to be stationary in the window, Wilhelm was unable to ascertain the numbers or see the plate clearly. Wilhelm did not observe any license plate numbers for the vehicle until he turned his vehicle around and approached Richardson's vehicle from behind. The rear license plate on the vehicle was displayed properly. Wilhelm immediately conducted a traffic stop of the vehicle. Wilhelm contacted the driver who identified himself as Richardson. Richardson did not have an operator's license on him. Wilhelm then asked Richardson to exit the vehicle and placed Richardson in the rear seat of the police cruiser for further positive identification. Wilhelm positively identified Richardson using the mobile data terminal computer in his vehicle. Wilhelm ran Richardson's name through the "warrant channel" and learned that Richardson's operator's license was suspended.
With respect to the placement of license plates on a vehicle, there are several relevant *426 statutory provisions. Neb.Rev.Stat. § 60-399 (Cum.Supp.2006) provides:
(1) Except as otherwise specifically provided, no person shall operate or park or cause to be operated or parked a motor vehicle or tow or park or cause to be towed or parked a trailer on the highways unless such motor vehicle or trailer has displayed the proper number of plates as required in the Motor Vehicle Registration Act.
... In all cases such license plates shall be securely fastened in an upright position to the motor vehicle or trailer so as to prevent such plates from swinging and at a minimum distance of twelve inches from the ground to the bottom of the license plate....
(2) All letters, numbers, printing, writing, and other identification marks upon such plates and certificate shall be kept clear and distinct and free from grease, dust, or other blurring matter, so that they shall be plainly visible at all times during daylight and under artificial light in the nighttime.
Neb.Rev.Stat. § 60-3,100 (Cum.Supp.2006) provides in relevant part that "[w]hen two license plates are issued, one shall be prominently displayed at all times on the front and one on the rear of the registered motor vehicle or trailer."
The district court concluded in this case that the manner in which the front license plate on Richardson's vehicle was displayed was in violation of the above provisions relating to the display of license plates in the Motor Vehicle Registration Act. We agree. Although Wilhelm could see that a license plate had been placed against the front windshield, he was unable to read the numbers on the plate. Richardson argues that Wilhelm's inability to read the plate was more attributable to the speed at which the two vehicles were traveling and the fact that the stop occurred at night than to the positioning of the plate itself; however, the district court clearly inferred that Wilhelm was unable to read the numbers on the front license plate due to the manner in which it was displayed. We give due deference to that inference and conclude, as did the district court, that a traffic violation occurred, giving Wilhelm probable cause to stop Richardson's vehicle. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. State v. Royer, 276 Neb. 173, 753 N.W.2d 333 (2008).
Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. Id. A traffic stop investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. State v. Louthan, 275 Neb. 101, 744 N.W.2d 454 (2008). Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are outstanding warrants for any of its occupants. Id. These were in fact the steps that Wilhelm took upon contacting Richardson and learning that Richardson did not have an operator's license on his person, and which led to the discovery that Richardson's license had been suspended.
Because the traffic stop was lawful and because Wilhelm's subsequent investigation was reasonably related in scope to the circumstances that justified the traffic stop, we conclude that the district court did not err in denying Richardson's motions to suppress.

2. SUFFICIENCY OF EVIDENCE
Richardson asserts that the evidence was insufficient to support the guilty *427 verdict in this case of driving during revocation, subsequent offense. Richardson argues that the State did not prove the contents of the municipal ordinance relative to the prior revocation of his operator's license and that the revocation period had expired at the time of the September 4, 2006, stop.

(a) Standard of Review
Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. State v. Thurman, 273 Neb. 518, 730 N.W.2d 805 (2007).

(b) Evidence Was Sufficient

(i) Proof of City DUI Ordinance
In order to prove the charge against Richardson, the State was required to prove that his driver's license had been revoked by a court and that at the time he was stopped on September 4, 2006, he was operating a motor vehicle during a period of court-ordered revocation.
Exhibit 3, a certified copy of Richardson's conviction for DUI, third offense, in violation of Lincoln Mun.Code § 10.52.020, was received at trial without objection by Richardson. Exhibit 3 shows that Richardson's offense occurred on August 30, 1990. The uniform citation and complaint shows that on that date, Richardson "[o]perate[d] or [was] in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs or when he/she had an amount of alcohol in his/her blood, breath, or urine in excess of the amount permitted by law; L.M.C. § 10.52.020." In that case, Richardson entered a guilty plea in February 1991 and was sentenced on May 3 to 5 months in jail and was ordered not to drive a motor vehicle for 15 years with his operator's license and driving privileges being revoked and suspended for a like period of time.
Exhibit 7 was received at trial in this case. The certification on exhibit 7 is dated May 21, 2007, and shows that exhibit 7 is a true and correct copy of city ordinance No. 14918 as the original appears in the office of the city clerk. Ordinance No. 14918 amended §§ 10.52.020 and 10.52.025 of the municipal code to change the penalties for DUI to bring the penalties in conformity with state law. Exhibit 7 shows that § 10.52.020 concerned the offense of DUI. The penalties for DUI found in § 10.52.020, as contained in exhibit 7, provide that if a person had two or more previous DUI convictions, the individual would be sentenced to a jail term of 3 to 6 months, would be fined $500, and would have his or her operator's license revoked for a period of 15 years. The ordinance also provided that the revocation was to be administered upon sentencing and should not run concurrently with any jail term imposed. Exhibit 7 shows that the ordinance was passed on June 27, 1988, with an operative date of July 9, 1988. Exhibit 7 includes a certificate page from the city clerk, dated July, 1, 1988, wherein the city clerk certified that the ordinance was passed by the city council and approved by the mayor.
Exhibit 6 was also received by the district court. Exhibit 6 is a certified copy of *428 city ordinance No. 15635 and shows that the ordinance enacted chapter 10.16 of the municipal code to revise and renumber certain sections of the code relating to DUI, unlicensed, or uninsured. The certification, dated May 21, 2007, shows that exhibit 6 is a true and correct copy of the ordinance as the original appears in the office of the city clerk. The ordinance was passed on July 9, 1990, with an operative date of December 1, 1990, and among other things, repealed the former § 10.52.020. The relevant municipal code provision for DUI in exhibit 6 is found in § 10.16.030 and contains sentencing provisions essentially identical to those found in the DUI code provision set forth in exhibit 7 with, for the most part, only a few minor grammatical changes from the text of the provision found in exhibit 7. Exhibit 6 includes a certificate page from the city clerk, dated July 16, 1990, certifying that the ordinance was passed by the city council and approved by the mayor.
Richardson offered exhibit 5, a certified copy of a portion of chapter 10.52 of the city ordinances, which has been in effect from its passage on July 9, 1990, and was still in effect on May 15, 2007, the date of the certification. Exhibit 5 shows that § 10.52.020, since July 9, 1990, has prohibited the obstruction of public streets by trains and since that time has not addressed the offense of DUI.
The district court concluded from the above evidence that exhibit 6 shows that the city code provisions regarding DUI offenses were amended and renumbered in July 1990, that the DUI provisions were previously found in § 10.52.020, and that at the time of Richardson's arrest on August 30, 1990, the provisions were actually found in § 10.16.030, which became effective on July 16, 1990. The court concluded that the State had proven beyond a reasonable doubt that Richardson had previously been convicted of DUI, third offense, on May 3, 1991, and that as a part of that conviction, his driver's license was suspended/revoked for 15 years.
We agree with the district court that the evidence shows that the municipal code DUI provisions were amended and renumbered in July 1990. The record shows, however, that those changes did not go into effect until December 1, 1990. Accordingly, while the changes were not in effect at the time Richardson committed the offense in August 1990, they were in effect at the time of Richardson's plea-based conviction and sentencing in February and May 1991, respectively.
We note that the changes to the particular DUI code provision in question were not substantive, but involved a few grammatical changes and a renumbering of the DUI provisions in general. Generally, when an offense is committed prior to a statutory change, the amendment or new statute is not applicable to the defendant. State v. Groff, 247 Neb. 586, 529 N.W.2d 50 (1995). A change which imposes a more burdensome punishment than existed at the time a crime was committed runs afoul of ex post facto principles. Id. Where a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically indicated otherwise. State v. Urbano, 256 Neb. 194, 589 N.W.2d 144 (1999).
Viewing and construing the evidence most favorably to the State, we conclude that the State put forth sufficient evidence to prove the contents of the city DUI ordinances in effect both at the time of Richardson's 1990 offense and in effect at the time of his plea and sentencing in 1991. Richardson's arguments relating to this portion of his assignment of error are without merit.

*429 (ii) Revocation Period Not Expired

For his 1990 DUI offense, Richardson was sentenced on May 3, 1991, to 5 months in jail, a $500 fine, and a 15-year license revocation with the sentence to run consecutive to any other sentence then being served by Richardson. Both the old version of § 10.52.020 and the new § 10.16.030 provide that the 15-year license revocation "shall be administered upon sentencing" and that such revocation "shall not run concurrently with any jail term imposed." Exhibit 4, the certificate of incarceration, shows that at the time Richardson was sentenced on May 3, he was serving another sentence which began on April 30 and concluded on October 1. Exhibit 4 further shows that Richardson commenced serving the DUI, third offense, sentence in question on October 2 and that he finished serving this sentence on January 27, 1992.
The district court reasoned that under the above facts, the 15-year license revocation period did not begin to run until January 28, 1992, and thus did not end until January 28, 2007. The court concluded that Richardson's license was still under revocation at the time the September 4, 2006, traffic stop. We agree and find no merit to Richardson's arguments to the contrary.

3. SENTENCING
Richardson asserts that the district court abused its discretion by imposing an excessive sentence.

(a) Standard of Review
When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007). When a sentence imposed within statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying these factors as well as any applicable legal principles in determining the sentence to be imposed. Id.

(b) Sentence Was Not Excessive
A subsequent offense of operating a motor vehicle during a revocation period is a Class III felony, punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. See, § 60-6,197.06; Neb.Rev. Stat. § 28-105 (Cum.Supp.2006). Because of Richardson's prior convictions for felony driving under suspension, the district court sentenced Richardson to 3 to 6 years' imprisonment, a sentence clearly within the statutory limits. The record shows that the district court did consider other relevant factors besides Richardson's past criminal history. In particular, the court noted Richardson's need for alcohol treatment and his desire to not "be here again." After reviewing the record and the presentence investigation report, which reflects previous driving under suspension convictions and sentences of various lengths, we conclude that the district court's sentence was not an abuse of its discretion.

V. CONCLUSION
The district court did not err in denying Richardson's motions to suppress or abuse its discretion in sentencing Richardson. There was sufficient evidence in the record to support Richardson's conviction.
AFFIRMED.