IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PANTOJA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ULISES PANTOJA, APPELLANT.

Filed March 21, 2023.    No. A-22-600.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Jason M. Finch, of Jason Finch & Associates, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Teryn Blessin for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Ulises Pantoja appeals from the district court for Sarpy County wherein Pantoja pled guilty and was sentenced on one count of motor vehicle homicide. Pantoja challenges his sentence as excessive and argues the district court erroneously credited him for only 13 days of time served. For the reasons that follow, we affirm.

## BACKGROUND

On January 12, 2022, the State filed an information charging Pantoja with motor vehicle homicide, driving under the influence of alcohol or drugs, willful reckless driving, and violation of a traffic control signal. Pursuant to a negotiated plea agreement, Pantoja pled guilty to motor vehicle homicide and the State dismissed the remaining charges. The State provided the following factual basis in support of Pantoja's plea:

On November 24, 2022 [sic] at approximately 10:49 p.m. officers were dispatched to a reported personal injury crash south of Harrison Street on 144th Street.

When officers arrived they observed two vehicles that were involved in the crash; a white Mitsubishi Outlander and a silver BMW, that were on either side of 144th Street south of Harrison.

The white Mitsubishi Outlander was driven by Candice McDowell who died from injuries she received when the silver BMW struck her vehicle. The driver of the silver BMW was identified as Ulises Pantoja.

Through the investigation and witness interviews it was found [Pantoja] had entered the intersection of 144th and Harrison heading southbound at a high rate of speed when the southbound traffic had a red light. Ms. McDowell had a green light as she attempted to head eastbound on Harrison and crossing 144th.

[Pantoja] was taken to the hospital for his injuries, and a blood draw was performed to assess his level of intoxication. The results of that blood test showed a blood alcohol .134.

The collision and continued momentum of [Pantoja's] vehicle after the collision were both in Sarpy County, Nebraska.

Prior to pronouncing Pantoja's sentence, the court stated that it "thoroughly reviewed" the presentence investigation report (PSR) and expressly accounted for Pantoja's age, education, and criminal history, as well as the nature and circumstances of the crime. The court noted that Pantoja pled guilty and took "full responsibility" for the charged crime. However, the court also observed that Pantoja had a lengthy criminal record and noted that Pantoja seemed reluctant to address the pro criminal and antisocial attitude underlying that behavior. In that regard, the court pointed to witness accounts that Pantoja attempted to dispose of alcohol from his vehicle at the scene of the accident, and accounts of the hospital staff that Pantoja was "extremely intoxicated." According to the PSR, Pantoja was assessed to be at a very high risk of recidivism and continued alcohol abuse. The court sentenced Pantoja to 16 to 20 years of incarceration, with credit for 13 days' time served. Pantoja appealed.

## ASSIGNMENTS OF ERROR

Pantoja assigns that the district court erred in (1) imposing an excessive sentence, and (2) allowing only 13 days of credit for time served.

## STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

ANALYSIS

Pantoja first assigns that the district court imposed an excessive sentence. When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding behavior, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

On appeal, there is no dispute that Pantoja's sentence falls within the statutory limitations. Rather, Pantoja argues that the district court failed to adequately consider his "rehabilitative needs, his age, health, general life circumstances, and willingness to enter a plea of guilty." Brief for appellant at 11. Pantoja acknowledges his "lengthy criminal record" and history of alcoholism. *Id.* However, Pantoja argues that the district court failed to properly weigh his "remorse, his desire to seek treatment for himself and others, and his willingness to enter a guilty plea." *Id.* at 12. We disagree.

Contrary to Pantoja's assertion, the record clearly demonstrates that the court expressly considered the alleged mitigating factors above. The court specifically stated that it tried "to balance the fact that [Pantoja] pled in the matter and accepted responsibility, but also he comes with a history of a series of chances that have been afforded to him." It was within the district court's discretion to balance Pantoja's criminal record and identified risk factors with his expressed remorse, desire for treatment, and willingness to enter a guilty plea. Upon our review of the record, we cannot say that the district court abused its discretion in balancing those factors, and we affirm the sentence imposed by the district court.

Pantoja next assigns that the district court erred in allowing him only 13 days of credit for time served. Pantoja argues that he was arrested on November 24, 2021, and remained in custody since that time, such that he should have been allowed roughly 8 months of credit for time served. The State counters that, while Pantoja was in custody during the bulk of the time that this case was pending, such custody was not "as a result" of the charges in this case. Brief for appellee at 17. Rather, the State argues that Pantoja posted bond in this case on December 7, 2021, such that it was proper to credit Pantoja with only the 13 days that elapsed between his arrest on November 24 and December 7.

Under Neb. Rev. Stat. § 83-1,106 (Reissue 2014), credit shall be given to an offender for time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such charge is based. See also *State v. Heckman*, 239 Neb. 25, 473 N.W.2d 416 (1991) (clarifying credit for time served only applies to time spent in custody as a result of particular offenses for which defendant was actually sentenced).

In July 2020, Pantoja was charged with possession of marijuana with intent to distribute. That case was placed in the young adult court program in February 2021. In September 2021, Pantoja entered a "structured sober living" residential program. On November 24, 2021, Pantoja was granted an overnight pass from that program, during which Pantoja committed the motor

vehicle homicide at issue in this case. There is no dispute that Pantoja was arrested after the accident on November 24, and the PSR indicates that he spent 13 days in custody as a result of the pending charges in this case. Thereafter, on December 8, 2021, Pantoja was again placed into custody as a result of the pending marijuana charge. In that regard, Pantoja voluntarily withdrew from the young adult court program in January 2022, and was sentenced on February 23 to 18 months in prison. As part of that sentence, Pantoja was allowed 80 days credit for time served, to include the 78 days from December 8, 2021, to February 23, 2022.

The record reflects that Pantoja spent only 13 days in custody as a result of the conduct that led to his conviction and sentence for motor vehicle homicide. The additional time that Pantoja spent in custody beyond those 13 days was as a result of the unrelated marijuana charge, and credit for that time was already accounted for in the sentence imposed on that charge. Thus, we conclude the district court did not abuse its discretion in allowing Pantoja credit for only 13 days of time served as a result of the charge for which his present sentence was imposed.

CONCLUSION

Finding no error, we affirm Pantoja's sentence.

AFFIRMED.